IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MACK NELSON SHORTY,

    Petitioner,                      No. CIV S-08-CV-1418 FCD CHS

    vs.

D.K. SISTO,

    Respondent.                  FINDINGS AND RECOMMENDATIONS

_____/

## I. INTRODUCTION

Petitioner, Mack Nelson Shorty, is a former state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving an indeterminate term of twenty years to life following his 1985 jury conviction for attempted murder causing great bodily injury and a penalty enhancement for being a habitual offender. Here, Petitioner does not challenge the constitutionality of his conviction, but rather, the execution of his sentence and, specifically, the December 19, 2006 decision of the Board of Parole Hearings (the "Board") finding him unsuitable for parole.

## II. ISSUES PRESENTED

Petitioner sets forth several grounds for relief in his pending petition. Specifically, Petitioner's claims are as follow, verbatim:

1

    (1)    The Board of Parole Hearings two years deferral of parole was based on resentencing prisoner under inapplicable life prisoners scheme "Life Means Life" Pinebox Parole" [sic] to deny prisoner/s one-third and <u>half-time credits</u> contrary to the mandatory credit provisions under CPC 667.7(1)(b) - habitual offender.

    (2)    The Board of Parole Hearings two years deferral of parole was based on frozen factors elements [sic] as "some evidence" (<u>the crime</u>) under inapplicable special aggravating circumstances that clearly restate manipulated transform and convert the instant life imprisonment must serve 20 years before eligible for parole into life without the possibility of parole and or death sentence.

    (3)    The Superior Court order denying petition for writ of habeas corpus review discovery evidentiary hearing neither factfinding is wrong and unreasonable and contrary to the glaring facts presented in habeas grounds/claims one and two violates petitioner's substantive procedural due process law rights and equal protection of the law rights warrants the court of appeal to remand habeas corpus constitutional claim back to superior court with instructions to hold a factfinding hearing in the interest of justice.

Petitioner's claims are difficult to decipher on the face of his petition. It appears, however, that Petitioner is claiming that (1) the Board failed to apply mandatory credits to his sentence, pursuant to section 667.7(a)(1) of the California Penal Code, unlawfully converting his sentence from twenty years to life imprisonment with the possibility of parole to life imprisonment without the possibility of parole; (2) his due process rights were violated by the Board's determination that he was unsuitable for parole, which unlawfully converted his sentence from twenty years to life imprisonment with the possibility of parole to life without the possibility of parole and/or a death sentence; and (3) the decision of the Los Angeles County Superior Court denying Petitioner's state petition for writ of habeas corpus was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented, in violation of title 28, section 2254 of the United States Code. Upon careful consideration of the record and applicable law, it is recommended that this petition for writ of habeas corpus relief be denied.

## III.  FACTUAL BACKGROUND

The basic facts of Petitioner's commitment offense were summarized by the Presiding Commissioner at Petitioner's parole hearing as follows:

> [T]he evidence established that at approximately 10:30 p.m. on July 9, 1985 Carl Cheetham . . . asked Debra . . . Dominique . . . to do him a favor and ride with [Petitioner], whom he referred to as . . . Mack . . . in order to deliver a package.  Ms. Dominique did not know the [Petitioner] but knew that Mr. Cheetham, a friend of her mother's, was a drug dealer.  She agreed to travel in [Petitioner's] vehicle in order to aver possible police suspicion from the [Petitioner].  After Ms. Dominique went to various locations with [Petitioner] she asked to be driven home.  [Petitioner] said he first wanted to stop at someone's house, but in Long Beach his car developed a flat tire and the two walked to a friend's residence to seek a ride home.  When [Petitioner] observed that the friend's car was gone, the two continued walking.  In a dark alley, [Petitioner] suddenly stabbed Ms. Dominique several times in the head, neck, shoulder and chest, then fled.  Ms. Dominique was able to walk to a nearby telephone booth where Los Angeles Police Officer Duane Beckman . . . found her bleeding and apparently in shock.  She told the officer her assailant was named . . . Mack . . . and described the [Petitioner's] car and its location.  Ms. Dominique was taken to a hospital where a tube was placed in her lung and she remained hospitalized for a week, including two days in the intensive care trauma unit.  Several days later while in the hospital she selected [Petitioner's] likeness from a display of six photographs.  A . . . stakeout . . . of the car was initiated which resulted in [Petitioner's] arrest.  [Petitioner's] defense was an alibi corroborated by the testimony of his brother and his brother's girlfriend.  He acknowledged that he was arrested on the morning of July 10th after changing the flat tire on the car . . . .
>
> And I will note that as to the prisoner's version as represented on . . . the October 23, 2006 Board Report . . . [s]ubsequent pages are dated November 25th, 2003, . . . does state:
>
> The prisoner's version remains the same as in - - the previous report dated March 15th of 1995.  The prisoner denies any responsibility for this crime.

(Pet. Ex. A at 5-9.)

Following a jury trial, Petitioner was found guilty of attempted murder causing great bodily injury and a penalty enhancement for being a habitual offender. Petitioner was sentenced to twenty years to life imprisonment with the possibility of parole. Petitioner's minimum eligible parole date passed on December 12, 1998. On December 19, 2006, Petitioner appeared before the Board

of Parole Hearings for a parole consideration hearing. After considering various positive and negative suitability factors, the panel concluded that Petitioner would pose an unreasonable risk of danger to society if released, and concluded that he was not suitable for parole. Petitioner sought habeas corpus relief in the Los Angeles County Superior Court. On September 18, 2007, the court denied his petition, finding that the Board's decision was supported by some evidence that Petitioner remained an unreasonable risk of danger to society. The California Court of Appeal, Second Appellate District, and the California Supreme Court denied relief without comment. Petitioner filed this federal petition for writ of habeas corpus on June 20, 2008. Respondent filed an answer on June 29, 2009, and Petitioner filed his traverse on July 23, 2009.

## IV. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000). Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme

1  Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d
2  911, 918 (9th Cir. 2002).

## V. DISCUSSION

**A. Section 667.7(a)(1) of the California Penal Code as it Affects Petitioner's Sentence**

Petitioner claims that the Board failed to apply mandatory credits to his sentence, pursuant to section 667.7(a)(1) of the California Penal Code, unlawfully converting his sentence from twenty years to life imprisonment with the possibility of parole to life imprisonment without the possibility of parole.

Section 667 of the California Penal Code provides, in relevant part:

> (a) Any person convicted of a felony in which the person inflicted great bodily injury . . . who has served two or more prior separate prison terms . . . is a habitual offender and shall be punished as follows:
>
> (1) A person who served two prior separate prison terms shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years . . . . Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term in a state prison imposed pursuant to this section, but the person shall not otherwise be released on parole prior to that time.

Petitioner has cited no specific facts in support of his contention that he has been denied mandatory sentence credits. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Nor has Petitioner has cited relevant authority in support of his claim.

Moreover, it appears that Petitioner's claim is grounded in state law as he alleges a violation of the California Penal Code without alleging any violation of the Constitution, federal laws, or treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1981). *See also Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (habeas relief not available for state law errors that are not of a constitutional dimension); *Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986). A writ of habeas corpus is available under 22 U.S.C. § 2254(a) only on the basis of some

1 transgression of federal law binding on the state courts. *Middleton*, 768 F.2d at 1085; *Gutierrez v.*
2 *Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983). Petitioner's claim thus fails to allege a federal
3 violation for which habeas corpus relief can be granted.

4 Petitioner is not entitled to habeas corpus relief on this claim.

**B.  Due Process in the California Parole Context**

Petitioner alleges that the Board's 2007 determination that he remained unsuitable for parole violated his federal right to due process of law. According to Petitioner, the Board's decision was improperly based upon his commitment offense and inapplicable aggravating circumstances, effectively transforming his sentence from twenty years to life imprisonment with the possibility of parole into a sentence of life imprisonment without the possibility of parole and/or a death sentence.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits state action that "deprive[s] a person of life, liberty or property without due process of law." U.S. CONST. AMEND. XIV, § 2. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Ky. Dep't. Of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). In the context of parole,

> [t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. [ ]. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures.

*Swarthout v. Cooke*, slip. op. at 4 (U.S. January 24, 2011). *See also Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979) ("There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Here, because California's

6

statutory scheme governing parole "uses mandatory language, [it] 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, thereby giving rise to a constitutionally protected liberty interest." *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz*, 442 U.S. at 12). *See also Swarthout*, slip op. at 4 ("[T]he Ninth Circuit held that California law creates a liberty interest in parole . . . . While we have no need to review that holding here, it is a reasonable application of our cases." (internal citations omitted)).

Despite the existence of this liberty interest, it is well established that inmates are not guaranteed the "full panoply of rights" during a parole suitability hearing as are normally afforded to criminal defendants under the Due Process Clause. *Swarthout*, slip op. at 4 ("In the context of parole, we have held that the procedures required are minimal."). *See also Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The United States Supreme Court has held that the protection afforded by the federal due process clause to California parole decisions consists solely of the "minimal" procedural requirements set forth in *Greenholtz*, specifically, "an opportunity to be heard and . . . a statement of the reasons why parole was denied." *Id*. at 4-5. *See also Greenholtz*, 442 U.S. at 16.

In addition, as a matter of state constitutional law, denial of parole to California inmates must be supported by "some evidence" demonstrating that the inmate poses an unreasonable risk of danger to society. *Hayward v. Marshall*, 603 F.3d 546, at 562 (citing *In re Rosenkrantz*, 29 Cal.4th 616 (2002)). *See also In re Lawrence*, 44 Cal.4th at 1191 (recognizing the denial of parole must be supported by "some evidence" that an inmate "poses a current risk to public safety"); *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008) (same). However, California's "some evidence" requirement is a substantive right provided by the state of California, and thus is not afforded protection by the federal Due Process Clause. *Swarthout*, slip op. at 5. Indeed, the Supreme Court has held that "[n]o opinion of [theirs] supports converting California's 'some evidence' requirement into a substantive federal requirement." *Id*. Moreover, the Supreme Court has long recognized that alleged violations of state law are not cognizable on federal habeas corpus review. *Id*. at 6; *Estelle v. McGuire*, 502

7

U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of the United States Constitution.").

Here, the record reflects that Petitioner was present at his 2006 parole suitability hearing, that he participated in the hearing, and that he was provided with the reasons for the Board's decision to deny parole. The federal due process clause requires no more. To the extent that Petitioner's claim rests on his allegation that the Board failed to follow California state law or procedure because its decision is not supported by sufficient evidence, it is not cognizable in a federal petition for writ of habeas corpus. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1986); (*Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986). As discussed above, a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. *Middleton*, 768 F.2d at 1085; *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).

Moreover, Petitioner's claim that the Board's decision improperly transformed his sentence into one of life without the possibility of parole or a death sentence must fail because the Board did not, in fact, alter Petitioner's sentence in any way. Petitioner stands convicted of attempted murder causing great bodily injury, with a penalty enhancement for being a habitual offender. As discussed above, Petitioner was sentenced as a habitual offender under section 667.7(a)(1) of the California Penal Code to a term of twenty years to life imprisonment with the possibility of parole, and this is the sentence he is currently serving. While Petitioner may have hoped or expected to be released sooner, the maximum duration of his confinement was set at life long before he appeared before the Board. The Board's decision to deny him a parole release date, therefore, did not enhance or otherwise alter his punishment.

Petitioner received all process he was due at his parole hearing and is thus not entitled to federal habeas corpus relief on his claim that the Board's unsuitability determination violated his

8

federal right to due process of law.

**C. The Decision of the Los Angeles County Superior Court**

Petitioner's final claim is that the decision of the Los Angeles County Superior Court denying Petitioner's state petition for writ of habeas corpus on his first and second claims, discussed above, was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. In essence, Petitioner is claiming that the state court violated title 28, section 2254(d) of the United States Code, which governs the standards for determining whether a state prisoner should be granted federal habeas corpus relief. As noted above, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

AEDPA, which governs Petitioner's petition because it was filed after April 24, 1996, establishes a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Accordingly, when determining whether the law applied to a particular claim by a state court was contrary to or an unreasonable application of "clearly established federal law," a federal court must review the last reasoned state court decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). "AEDPA's, 'clearly established Federal law' requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in U.S. Supreme Court decisions." *Robinson*, 360 F.3d at 155-56 (citing *Williams*, 529 U.S. at 381). In other words, "clearly established Federal law" will be " the governing legal principle or principles set forth by [the U.S. Supreme] Court at the time a state court renders its decision." *Lockyer*, 538 U.S. at 64. Provided that the state court adjudicated petitioner's

9

claims on the merits, its decision is entitled to deference, no matter how brief. *Lockyer*, 538 U.S. at 76; *Downs v. Hoyt*, 232 F.3d 1031, 1035 (9th Cir. 2000). Conversely, when it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, AEDPA's deferential standard does not apply and a federal court must review the claim de novo. *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

The petitioner bears the burden of demonstrating that the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford*, 537 U.S. at 24 ; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meanings." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal court may grant a writ of habeas corpus only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405. It is not necessary for the state court to cite or even to be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Moreover, a state court opinion need not contain "a formulary statement" of federal law, but the fair import of its conclusion must be consistent with federal law. *Id*.

Under the "unreasonable application" clause, the court may grant relief "if the state court correctly identifies the governing legal principle...but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694. As the Supreme Court has emphasized, a court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410. Thus, the focus is on "whether the state court's application of clearly established federal law is *objectively* unreasonable." *Bell*, 535 U.S. at 694 (emphasis added).

Petitioner once again fails to allege any specific facts or authority in support of his

claim that the decision of the Los Angeles Superior Court violated section 2254. As noted above, "conclusory allegations which are not supported by a statement of specific facts to not warrant habeas relief." *James v. Borg*, 24 F.3d at 26.

Moreover, while the Los Angeles County Superior Court did not specifically address Petitioner's first claim in its opinion, the issue is grounded in state law and not cognizable for federal habeas corpus relief.

As to Petitioner's second claim that the Board's unsuitability determination violated his federal right to due process, the state court rejected that claim on state law grounds, finding that "some evidence" supported the Board's decision. The state court's rejection of Petitioner's claim on state law grounds was neither contrary to nor an unreasonable application of clearly established federal law. As discussed above, Petitioner was afforded all federal process to which he was due during his parole consideration hearing under the Constitution, laws and treaties of the United States.

Petitioner is not entitled to habeas corpus relief on his claim that the decision of the Los Angeles County Superior Court violated title 28, section 2254 of the United States Code.

## VI. CONCLUSION

Accordingly, IT IS RECOMMENDED that the pending petition for writ of habeas corpus be denied. These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. *See* Rule 11, Federal Rules Governing

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: March 1, 2011

*Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE